**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MITCHELL LIESMANN AND HOLLY LIESMANN** | § § § § | **CIVIL ACTION NO:** |
| *Plaintiffs* | § | |
| v. | § § | |
| **DRV, LLC** | § § § | |
| *Defendant* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I. Parties

1. Plaintiffs, MITCHELL LIESMANN and HOLLY LIESMANN, now and have been at all times material hereto citizens of the state of Texas.

2. Defendant, DRV, LLC, hereinafter "DRV," is an Indiana limited liability companies with its principal place of business in the state of Indiana and is the final stage assembler of the recreational vehicle that Plaintiffss purchased and is a merchant in goods of the kind involved in this case.

DRV's agent for service of process is CT Corporation System, 334 North Senate Street, Indianapolis, IN, 46204.

### II. Jurisdiction

3. This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original

-1-

jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

4.   Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56. VENUE. An action brought under this subchapter may be brought:

> (1)   in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or
>
> (2)   in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033. Breach of Warranty By Manufacturer:

> A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or in the county in which the Plaintiffs resided at the time the cause of action accrued.

### IV.   Conditions Precedent

5.   All conditions precedents have been performed or have occurred.

### V.   Facts

**A.   The Transaction**

6.   On October 27, 2022, Plaintiffs purchased a new 2022 DRV MOBILE SUITES

41RKDB VIN: 5KEAG4321N1511191, hereinafter "MOBILE SUITES," from EXPLORE USA RV SUPERCENTER. The MOBILE SUITES was purchased primarily for Plaintiffs's personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

7. The sales price of the MOBILE SUITES was $195,476.04, excluding finance charges. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.***, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** ***Chariton Vet Supply, Inc. v. Moberly Motors Co.***, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B.  Implied Warranties

8. As a result of the sale of the MOBILE SUITES by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the MOBILE SUITES would pass without objection in the trade under the contract description; and that the MOBILE SUITES was fit for the ordinary purpose for which such motor vehicles are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.  Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the MOBILE SUITES occurring during a specified warranty period resulting from defects, non-conformities, and conitions in material or workmanship would be repaired, and that repair work on the MOBILE SUITES had, in fact, repaired the defects, non-conformities, and conitions.

11. Plaintiffs's purchase of the MOBILE SUITES was accompanied by express warranties offered by Defendants and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the MOBILE SUITES.

12. The basic warranties covered any repairs or replacements needed during the warranty period due to defects, non-conformities, and conitions in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the DRV's and FORD's warranty booklet and owners manual.

### D.  Actionable Conduct

13. In fact, when delivered, the MOBILE SUITES was defective in materials and workmanship, with such defects, non-conformities, and conditions being discovered shortly after purchase. Many defects, non-conformities and conditions have occurred since purchase, including, but not limited to:

    A. PROPANE LEAK DEFECTS, NON-CONFORMITIES AND CONDITIONS;

    B. HYDRAULIC JACK DEFECTS, NON-CONFORMITIES AND CONDITIONS;

    C. SLIDEOUTS DEFECTS, NON-CONFORMITIES AND CONDITIONS;

    D. WATER LEAK DEFECTS, NON-CONFORMITIES AND CONDITIONS;

    E. ELECTRICAL OUTLET IN KITCHEN DEFECTS, NON-CONFORMITIES AND CONDITIONS;

    F. TOILET LEAK DEFECTS, NON-CONFORMITIES AND CONDITIONS;

      G.     **DOOR , NON-CONFORMITIES AND CONDITIONS;**

      H.     **BED ROLLER DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

      I.     **TEAR IN MASTER BEDROOM FLOOR DEFECTS, NON-CONFORMITIES AND CONDITIONS;**

      J.     **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY REPAIR ORDER OR WARRANTY HISTORY;**

      K.     **THE MOBILE SUITES HAS BEEN OUT OF SERVICE OVER 120 DAYS IN THE FIRST YEAR OF OWNERSHIP.**

14. Since purchase, Plaintiffs have returned his MOBILE SUITES to the Defendants for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the MOBILE SUITES the more significant and dangerous conditions were not repaired. Defendants failed to repair the MOBILE SUITES so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the MOBILE SUITES continues to this day to exhibit some or all of the non-conformities described herein.

15. The defects, non-conformities, and conditions experienced by Plaintiffs with the MOBILE SUITES substantially impaired its use, value and safety.

16. Plaintiffs directly notified the Defendants of the defects, non-conformities and conditions of the MOBILE SUITES on numerous occasions.

## VI. Causes of Action

**COUNT 1: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

17. Plaintiffs re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

18. Defendants violated the following provisions of the DTPA:

   a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

   b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

   c. §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

   d. §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

   e. §17.50(3): an unconscionable action or course of action as defined by §17.45(5); and

   f. §17.46(b)(12): misrepresenting agreements and legal rights.

19. Because of the inherent defects in the MOBILE SUITES which defects existed at the time the MOBILE SUITES was sold although not discovered until later, the MOBILE SUITES was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such recreational vehicles are used. Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants constitutes a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

20. The Defendants' statements that the MOBILE SUITES's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants' services. For this reason, these representations were false, misleading and deceptive as defined in

-6-

DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

21. The Defendants' acts or practices in the selling and/or repairing of the MOBILE SUITES to Plaintiffs were unconscionable actions or courses of action because they took advantage of the Plaintiffs' lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

22. Plaintiffs further contends that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

23. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

24. Any purported waiver or limitation of rights under DTPA by the Defendants is a violation of public policy under §17.42. WAIVERS: PUBLIC POLICY:

    (a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if:

    (1) the waiver is in writing and is signed by the consumer;

    (2) the consumer is not in a significantly disparate bargaining position; and

    (3) the consumer is represented by legal counsel in seeking or acquiring the goods or services.

    (b) A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a Defendants or an agent of the Defendants.

...

(c) A waiver under this section must be:

    (1) conspicuous and in bold-faced type of at least 10 points in size;

    (2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

    (3) in substantially the following form:

"I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver."

(d) The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

25. Any purported limitation or reduction in the statute of limitations by the Defendants under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

    (a) Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

    (b) This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

26. Under DTPA the statute of limitations is two years §17.565. LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in**

**this section may be extended for a period of 180 days if the Plaintiffss proves that failure timely to commence the action was caused by the Defendants's knowingly engaging in conduct solely calculated to induce the Plaintiffss to refrain from or postpone the commencement of the action.**

27. The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

28. The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

29. Plaintiffs seeks the remedy of rescission of the sales contract under §17.50(b)(3) and seeks an order necessary to restore to Plaintiffs any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

30. As a direct and proximate result of Defendants' willful violation of its obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the MOBILE SUITES, damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, mental anguish and attorneys' fees. Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $300,000.00 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

31. Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate

amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: BREACH OF EXPRESS WARRANTIES**

32. Plaintiffs re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

33. The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs's MOBILE SUITES or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the MOBILE SUITES and warranted that the MOBILE SUITES was free of defects in materials and work quality at the time of delivery.

34. As alleged above, the Defendants breached their warranties by offering for sale, and selling as safe to Plaintiffs a MOBILE SUITES that was latently defective, unsafe, and likely to cause economic loss to Plaintiffss.

35. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

36. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 3:   BREACH OF IMPLIED WARRANTIES

37. Plaintiffs re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

38. The Defendants impliedly warranted that Plaintiffs' MOBILE SUITES was merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

39. Because of the defects, Plaintiffs' MOBILE SUITES is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

40. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII.   Economic and Actual Damages

41. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

   a. Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

   b. Benefit of the Bargain Rule. The difference between the value of the goods and services would have had if they had been as promised and their value as delivered.

   c. Costs of Repairs.

   d. Loss Profits.

  e.  Loss of Use.

  f.  Diminished or reduced market value.

  g.  Damages for Mental Anguish.

### VIII. Damages for Mental Anguish

42. Plaintiffs would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

43. As a result of such acts, practices and /or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiffs hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

### IX. Request for Rescission of the Sale under Texas DTPA §17.50(b)(3)

44. Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

45. Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to him the money obtained by Defendants as a result of its breach of Texas DTPA as set forth above. Plaintiffs also seek cancellation of the debt and now offers to return the MOBILE SUITES to Defendants.

### X.     Multiple Damages

46.     The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined under Texas DTPA in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

47.     Plaintiffs further show that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

48.     Therefore, Plaintiffs are entitled to recover multiple damages as provided by §17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of his economic damages.

### XI.     Attorney Fees and Costs

49.     Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### XII.     Prayer

50.     For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.     For general, special and actual damages according to proof at trial;

    b.     Rescinding the sale of the 2022 DRV MOBILE SUITES 41RKDB VIN:

-13-

5KEAG4321N1511191 under Texas DTPA §17.50(b)(3) and an order necessary to restore to Plaintiffs any money or property, real or personal, which may have been acquired in violation of the Texas DTPA and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c. For incidental and consequential damages according to proof at trial;

d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e. Any diminution in value of the MOBILE SUITES attributable to the defects;

f. Past and future economic losses;

g. Prejudgment and post-judgment interest;

h. Damages for loss of use of the MOBILE SUITES;

i. Civil Penalties and/or Punitive damages;

j. Damages for mental anguish;

k. Attorney fees;

l. Costs of suit, expert fees and litigation expenses; and

m. All other relief the Arbitrator deems appropriate.

### XIII.  Demand for Jury Trial

51. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
(337) 371-0375

ATTORNEY FOR PLAINTIFFS